(18 P.3d 304)
No. 85,264

In the Matter of the Adoption of BABY BOY M., a/k/a J.J.M., a minor child, born 12/28/99.

—

Opinion filed February 16, 2001.

*Allan A. Hazlett*, of Topeka, for the appellants.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

PIERRON, J.: Sean and Jodi Anne Porrini, the adoptive parents of J.J.M., appeal the district court's order requiring them to reimburse Medicaid payments for prenatal care, delivery, and birth of J.J.M.

The facts are largely undisputed. The birth mother lived in Springfield, Missouri, where she attended college and became involved with drugs. She had periodic stays in jail and then participated in treatment programs. J.J.M. was conceived in March 1999 in Springfield. After the birth mother completed her treatment program, she moved to Johnson County, Kansas, to live with her sister.

On August 26, 1999, the birth mother moved to Topeka. In an affidavit, she stated that while in Topeka she registered with a temporary employment service, found an apartment, and applied for student aid at Washburn University. She indicated her goal in coming to Topeka was more than just to give birth; she wanted to remove herself from past detrimental associations.

On September 8, 1999, the birth mother applied for Medicaid. She made full disclosure of her adoption plan. Her application was approved and Medicaid paid for the prenatal care and delivery of J.J.M.

J.J.M. was born on December 28, 1999, and the petition for adoption was filed the next day. Contemporaneous with the petition, the consent of the birth mother and an accounting of consideration and disbursement were filed. The accounting detailed the Porrinis' payment of attorney fees, legal expenses, living expenses for the birth mother, and also part of J.J.M.'s medical expenses. However, the accounting stated the birth mother's medical expenses and the other part of J.J.M.'s medical expenses would be paid by Medicaid. The district court entered an order of temporary custody and the Porrinis returned to Pennsylvania with J.J.M.

On February 18, 2000, the district court conducted the final hearing on the decree of adoption and termination of the natural father's parental rights. The court approved the decree of adoption. However, the court, *sua sponte*, entered the following order:

"Included in that is approval of their accounting, except that I see no reason why some part of this should be paid by taxpayer dollars, whether they come from Washington or Topeka, or however you want to look at it, whatever expenses involved that was paid by Medicaid should be reimbursed by these petitioners. And that will be included in the order."

The Porrinis appeal only the district court's order requiring them to reimburse Medicaid.

The Porrinis argue the district court lacked statutory authority to order reimbursement of Medicaid payments. They contend there is nothing in the Kansas Adoption and Relinquishment Act, K.S.A. 59-211 *et seq.*, suggesting that the district court has the authority to alter the terms of an adoption contract to include payments not contemplated by the parties simply because the court could "see no reason why some part of this should be paid by taxpayer dollars." We agree.

In Kansas, the terms and conditions of any consideration given to a birth mother in connection with an adoption are strictly controlled by statute. K.S.A. 59-2121 states as follows:

"(a) Except as otherwise authorized by law, no person shall request, receive, give or offer to give any consideration in connection with an adoption, or a placement for adoption, other than:

(1) Reasonable fees for legal and other professional services rendered in connection with the placement or adoption not to exceed customary fees for similar services by professionals of equivalent experience and reputation where the services are performed, except that fees for legal and other professional services as provided in this section performed outside the state shall not exceed customary fees for similar services when performed in the state of Kansas;

(2) reasonable fees in the state of Kansas of a licensed child-placing agency;

(3) actual and necessary expenses, based on expenses in the state of Kansas, incident to placement or to the adoption proceeding;

(4) actual medical expenses of the mother attributable to pregnancy and birth;

(5) actual medical expenses of the child; and

(6) reasonable living expenses of the mother which are incurred during or as a result of the pregnancy.

"(b) In an action for adoption, a detailed accounting of all consideration given, or to be given, and all disbursements made, or to be made, in connection with the adoption and the placement for adoption shall accompany the petition for adoption. Upon review of the accounting, the court shall disapprove any such consideration which the court determines to be unreasonable or in violation of this section and, to the extent necessary to comply with the provisions of this section, shall order reimbursement of any consideration already given in violation of this section.

"(c) Knowingly and intentionally receiving or accepting clearly excessive fees or expenses in violation of subsection (a) shall be a severity level 9, nonperson felony. Knowingly failing to list all consideration or disbursements as required by subsection (b) shall be a class B nonperson misdemeanor."

The predecessor statute to K.S.A. 59-2121 (K.S.A. 1985 Supp. 59-2278c [repealed L. 1990, ch. 145, § 38]) was enacted in 1985 and is similar to the present statute in that it prohibited any consideration in an adoption proceeding except for the six exemptions quoted above. Both the 1985 statute and the present statute were aimed at controlling exorbitant adoption fees and expanding the district court's role in insuring that adoptive parents do not pay more consideration to the birth mother than is permitted by the statute, *ie.* to prevent babies from being treated as a commodity. *In re Adoption of J.H.G.*, 254 Kan. 780, 869 P.2d 640 (1994). The current statute criminalizes the receipt of any consideration not meeting one of the six exceptions and, even if one of the exceptions applies, receipt of such consideration is prohibited if the amount

is unreasonable. *State v. Clark*, 16 Kan. App. 2d 552, 826 P.2d 925, *rev. denied* 250 Kan. 806 (1992).

There is no statutory authority or legal authority requiring adoptive parents to pay a birth mother's medical expenses. However, pursuant to K.S.A. 59-2121, the adoptive parents can agree to pay a birth mother's medical expenses and the district court can allow payment of actual medical expenses of the birth mother attributable to pregnancy and birth.

Additionally, there is no reimbursement requirement in the federal Medicaid statutes and regulations which would demand the adoptive parents pay a birth mother's expenses. Medicaid was originally enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. 1396 *et seq.* (1994). The Second Circuit has described Medicaid as a "cooperative federal/state cost-sharing program designed to enable participating states to furnish medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical care and services." *DeJesus v. Perales*, 770 F.2d 316, 318 (2d Cir. 1985), *cert. denied* 478 U.S. 1007 (1986). States that choose to participate in the Medicaid program are subject to the requirements of the applicable federal statutes and to the regulations promulgated by the Secretary of the Department of Health and Human Services pursuant thereto. See 42 U.S.C. 1396a (1994); 42 C.F.R. § 435.116 (2000).

The Secretary of the Department of Health and Human Services has set forth qualifications for pregnant women to receive assistance with medical expenses and prenatal expenses associated with a pregnancy. 42 C.F.R. § 435.116 (2000) provides in part:

"(a) The agency must provide Medicaid to a pregnant woman whose pregnancy has been medically verified and who—

(1) Would be eligible for an AFDC cash payment (or would be eligible for an AFDC cash payment if coverage under the State's AFDC plan included an AFDC-unemployed parents program) if her child had been born and was living with her in the month of payment;

(2) Is a member of a family that would be eligible for an AFDC cash payment if the State's AFDC plan included an AFDC-unemployed parents program; or

(3) Meets the income and resource requirements of the State's approved AFDC plan. In determining whether the woman meets the AFDC income and resource requirements, the unborn child or children are considered members

of the household, and the woman's family is treated as though deprivation exists."

The birth mother in the present case made full disclosure of the adoption plan when she applied for the medical card. Medical coverage was subsequently approved, and full payment of the prenatal and delivery expenses occurred. The Porrinis contend that irrespective of the beliefs of the district court, the situation in the present case is the most common method throughout this country of paying these expenses.

The Kansas Department of Social and Rehabilitation Services (SRS) was well aware of the pending adoption and the payment of the medical expenses. SRS is well versed in instituting actions to recover public assistance benefits when inappropriately dispersed. See, *e.g. State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 822 P.2d 1033 (1991) (SRS claimed a trust fund providing support for Jackson was an available resource to her and SRS sought reimbursement from Jackson, pursuant to K.S.A. 39-719b, for public assistance benefits paid to her in an amount in excess of $35,000.). Yet, there is apparently no effort on the part of SRS or the federal government to seek reimbursement of the medical expenses paid by Medicaid in this case.

The Porrinis cite *Birth Hope Adopt. v. Az. Health Care Cost Contain.*, 218 F.3d 1040 (9th Cir. 2000) (Birth Hope), for authority that the district court cannot expand the scope of the Kansas Adoption and Relinquishment Act beyond the express limits set forth by the legislature. In *Birth Hope*, an adoption agency sought a declaration that Ariz. Rev. Stat. § 8-548.07.A (2000) violated the Commerce Clause since it required out-of-state persons who adopt children from Arizona to reimburse the State of Arizona for the full cost of prenatal care and delivery of the adopted child when those costs were paid by the Arizona Health Care Cost Containment System (AHCCCS). The State argued it sought reimbursement of the same costs from in-state adoptive parents under provisions of Arizona law that allowed insurance policies that covered an adoptive mother to cover the expenses of the birth mother and also general statutory provisions requiring a person to provide rea-

sonable support to one's natural and adoptive children, Ariz. Rev. Stat. § § 25-501, 36-2903.G (2000). 218 F. 3d at 1044-45.

The *Birth Hope* court found Ariz. Rev. Stat. § 8-548.07.A was discriminatory on its face because it required only out-of-state adoptive parents to reimburse AHCCCS. 218 F.3d at 1044. The court also found Ariz. Rev. Stat. § 8-548.07.A was not a valid compensatory tax since the State could not identify an intrastate tax burden for which the State was attempting to compensate. 218 F.3d at 1044, citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 103, 128 L. Ed 2d 13, 114 S. Ct. 1345 (1994). In examining the relevant statutes, the *Birth Hope* court stated that the scope of an agency's action is measured by its statutory authority and that Ariz. Rev. Stat. § 8-548.07.A violated the Commerce Clause. 218 F.3d at 1045.

It appears the district court is attempting a cost containment policy concerning financial assistance to pregnant mothers where the baby will be given up for adoption. We agree there is a decreasing availability of public assistance funds, but we cannot, through judicial fiat, control those costs in cases like this.

We find the district court erred in requiring the Porrinis to reimburse SRS for the medical expenses paid by Medicaid where there is no statute, regulation, or contractual agreement requiring the adoptive parents to pay those expenses.

Reversed.